IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JANE M. JOHNSTON,                    )
                                     )
            Plaintiff,               )
                                     )
      -vs-                           )        Civil Action No. 07-1407
                                     )
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF SOCIAL               )
SECURITY                             )
                                     )
            Defendant.               )

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 7
and 9). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 8 and 10). After
careful consideration of the submissions of the parties, and for the reasons discussed below,
Defendant's Motion (Docket No. 9) is granted and Plaintiff's Motion (Docket No. 7) is denied.

## I. BACKGROUND

Plaintiff has brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. 1383 (c)(3), for
review of the final decision of the Commissioner of Social Security ("Commissioner") denying
her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§
401-434 and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 1381-1383f.

On April 24, 2005, Plaintiff protectively filed the instant application for DIB and SSI
alleging disability since December 30, 2000, due to a bad mental state, depression, panic
attacks, diverticulitis, and irritable bowel syndrome. (R. 66-71, 83). The state agency denied
Plaintiff's claim. (R. 58-62). Plaintiff requested a hearing. (R. 51-52). Administrative Law Judge

Raymond J. Zadzilko ("ALJ") held a hearing on November 14, 2006, at which time Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (R. 359-405). On January 25, 2007, the ALJ denied Plaintiff's claim for benefits finding that the Plaintiff is not disabled under the Act. (R. 21-33). The Appeals Council denied Plaintiff's request for review on August 16, 2007. (R. 7-10). After thus exhausting her administrative remedies, Plaintiff filed the instant action.

The parties have filed cross-motions for summary judgment. The Plaintiff raises four main issues on appeal. First, she claims that the ALJ erred in determining that Plaintiff's sleep apnea and irritable bowel syndrome were not severe impairments. Second, she contends that the ALJ erred in concluding that Plaintiff did not meet a mental health listing. Third, she claims that the ALJ erred in his consideration of Plaintiff's credibility. Fourth, she contends that the ALJ erred in not including the limitation in her left hand in his hypothetical to the VE.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in a social security case is whether substantial evidence exists in the record to support the Commissioner's opinion. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, if the Commissioner's findings of fact are supported by substantial evidence, they must be accepted as conclusive. 42 U.S.C. 405 (g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional facts from its own independent analysis of portions of the record which

2

were not mentioned or discussed by the ALJ. <u>Fargnoli v. Massarini</u>, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

To demonstrate disability and eligibility for social security benefits under the Act, the plaintiff must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); <u>Brewster v. Heckler</u>, 786 F.2d 581, 583 (3d Cir. 1986). When resolving the issue of whether a claimant is disabled and whether a claimant is entitled to DBI benefits, the ALJ applies a five step analysis. 20 C.F.R. § 404.1520 (a).

The ALJ must determine: (1) whether the claimant is currently engaging in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment whether it meets or equals the criteria listed in 20 C.F.R. pt. 404. subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. In all but the final step, the burden of proof is on the claimant. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §§ 416(1), 423(d)(1)(A).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. <u>Podedworny v. Harris</u>, 745 F.2d 210, 221 (3d Cir. 1984).

<u>B. ALJ Determination of Severe Limitations</u>

Johnston first argues that the prior decision is not supported by substantial evidence because the ALJ did not consider her irritable bowel syndrome and sleep apnea as severe impairments. The Commissioner's position is that the severity determination is supported by substantial evidence. Having thoroughly reviewed the record, I agree with the Commissioner.

The Secretary can deny benefits based on a finding that the plaintiff failed to show a medically severe impairment without considering age, education, and work experience. Bowen v. Yuckert, 482 U.S. 137 (1987). A limitation is non-severe if it "does not significantly limit [ ] physical or mental ability to do basic work activities." 20 C.F.R. §§404.1521, 416.921. In the instant case, the ALJ determined that Johnston had several severe impairments including cervical degenerative disc disease, obesity, major depressive disorder, anxiety disorder, and borderline intellectual functioning. (R. 23). However, he did not consider her irritable bowel syndrome and sleep apnea to be severe. (R. 24).[1]

The record indicates that Johnston uses a CPAP machine to sleep. (R. 111, 197). However, the one sleep study that was performed on July 20th and 21st of 2005 suggested that Johnston "should do well on CPAP therapy." (R. 197). There is no further indication in the record that the CPAP therapy did not succeed or that Johnston would be further physically or mentally limited by her sleep apnea or the treatment.

With regard to her irritable bowel syndrome, Johnston had two colonoscopies performed. The first was in August of 2005 and revealed evidence of diverticular disease. (R. 213). The second was in August of 2006 and revealed that the colon was normal in appearance but was friable. (R. 341). After both procedures, Johnston was treated with medication. (R. 273-274). In September 2005, Dr. Edwards indicated that Johnston was "doing very well with her current

---

[1]The Defendant correctly notes that regardless of the number of severe impairments that an ALJ finds, only one severe impairment is necessary for the five step evaluation process to continue to the third step. Johnston was found to have five severe impairments and in fact, the evaluation process did continue. No error existed in the basic process of the five-step analysis.

regimen of Cholestromin twice a day and it helps with her diarrhea and she does not have any belly pain." (R. 320). In September 2006, Edwards indicated that she put Johnston on Bentyl and that it was working well. (R. 338). Edwards reported that "[Johnston] had to go four times a day because of some other problems. Now that the diarrhea has improved she only has bowel movements twice a day." (R. 338). In fact, when Johnston indicated to Dr. Edwards that she believed she was entitled to disability based on her diarrhea, Edwards indicated that he did not share her opinion. (R. 339).

The ALJ's findings on the severity of Johnston's irritable bowel syndrome and sleep apnea is clearly supported by substantial evidence.[2] There is no indication that the treatments that Johnston was receiving were not alleviating Johnston's symptoms. As such, they were not affecting her physically or mentally in a way that would preclude her from performing basic work.

C. Mental Health Listing Determination

Plaintiff next contends that the ALJ erred in failing to conclude that she met a mental health listing. The ALJ determined that the record supported Johnston's claims that she was suffering from major depressive disorder and anxiety disorder. (R. 23). However, to meet a listing for a mental health disorder for either depression or anxiety, the regulations would require Johnston to be suffering from one of several, severe functional limitations. 20 C.F.R. pt. 404, subpt. P, app. 1, §§12.04, 12.06. The ALJ found that Johnston did not meet these requirements and the record supports his findings.

In Dr. Lekhwani's mental status evaluation, he noted that Johnston was "cooperative, communicative, relevant, and made good eye contact. There were no motor abnormalities. Her

---

[2]I note that while the ALJ did not find that these impairments were severe, he did consider the impairments and their symptoms in his analysis of Plaintiff's work capability. (R. 25-33). He did not totally discount them.

speech was normal in rate, rhythm, and volume. She described her mood as tired and depressed. Her affect was appropriate.  Thought process was goal directed.  Thought content did not reveal any paranoia or suicidal or homicidal ideations." (R.334). He noted no significant mental impairments and treated Johnston with medication. Dr. Lehhwani reported that Johnston had a Global Assessment Functioning of 55 indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. (R. 334). See DSM-IV-TR at 34.

In Dr. Heil's psychiatric review of Johnston, he noted that Johnston had mild restrictions in the activities of daily life; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and suffered no repeated episodes of decompensation. (R. 260-272). Dr. Richless also noted no significant mental limitations. (R. 254).

As such, the record does not indicate that Johnston suffered from the severe limitations contemplated by the listings. As such, the ALJ's finding that she did not meet or medically equal any of the listings is supported by substantial evidence.

## D. Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ failed to give Plaintiff's subjective assessment of her own capabilities credence in three instances: 1) in the ability of Plaintiff to perform daily activities; 2)in the severity of the effects of her mental health complaints; and 3)in the functional limitations in her left hand. The ALJ indicated that "the statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not entirely credible and are inconsistent with the totality of the evidence." (R. 29).

A plaintiff's subjective opinion about his own disability is entitled to credence if it is supported by the medical record. 42 U.S.C. §§ 423 (d)(5)(A), 1382c (a)(3)(H)(I).  See Taybron v. Harris, 667 F.2d 412, 415 n.5 (3d Cir. 1981). It is the responsibility of the ALJ to determine the

credibility of a plaintiff's statements about his or her own disability. <u>Dobrolowsky</u> 606 F.2d at 409). In fact, the ALJ is required to make findings on credibility. <u>See</u> <u>Kephart v. Richardson</u>, 505 F.2d 1089 (3d Cir. 1974).

Johnston argues that the ALJ overstated her ability to do the activities of daily living. However, in September and November of 2006, Johnston reported to her doctor that she walked four to five miles a day. (R. 342-43). She also reported at various times that she cares for both her 5-year-old son and 3-year old autistic daughter, drives her vehicle, can carry a shopping bag, and performs daily household chores. (R. 105, 302, 323, 342-43, 351).

Additionally, none of the functional capacity reports completed by doctors in this case reported limitations that would preclude Johnston from performing daily activities. (R. 247-248, 252-259, 284-291, 293-297, 315-318). In fact, the consulting physician reported that Johnston's "barriers to employment appeared to be largely related to motivation and child rearing responsibilities." (R. 255). This is coupled with Dr. Edwards' assessment that Plaintiff was not eligible for disability, despite her claims. (R. 339). Considering all of the evidence in the record, the ALJ's assessment of Plaintiff's ability to do the activities of daily life was supported by substantial evidence.

Johnston further argues that the ALJ discounted her statements about the severity of her mental health problems. (R. 255, 302, 322-337). However, as was stated above, the medical evidence does not support a finding of disability based on Johnston's major depressive disorder and anxiety disorder. By all accounts, Johnston was being successfully treated for her mental ailments. (R. 330, 334-338). As such, the ALJ's decisions regarding her mental health complaints were supported by substantial evidence.

Finally, Johnston suggests that the ALJ failed to consider her testimony about the limitation with the use of her left hand. At the hearing before the ALJ, Johnston testified that she had problems gripping things with her left hand. (R. 385). Johnston suggests that the ALJ failed

to consider this limitation in his opinion. However, the ALJ considered the problems that Johnston was experiencing with her upper left extremity but concluded, pursuant to the medical record, that the limitations stemming from it were mild as compared to Johnston's complaint. (R. 26).

Diagnostic studies done regarding issues with Johnston's cervical spine, the alleged cause of the decreased range of motion with her left upper extremity, were largely normal with the exception of some moderate stenosis, disc bulging, and mild to moderate carpal tunnel in her left hand. (R. 172,188-191, 339-341). No doctor reported issues with the ability of Plaintiff to grasp with her left hand. In fact, a number of them reported that she had no limitations in reaching, handling, fingering, or feeling. (R. 228, 248, 258, 287, 296, 317). The medical record does not support that Johnston's left arm was subject to a severe functional limitation.

As a result, the ALJ made an appropriate credibility determination regarding the statements of the Plaintiff. His determinations were supported by substantial evidence in the record.

E. The Hypothetical Question to the VE

Johnston's final argument is related to the third. She claims that the hypothetical posed by the ALJ was defective because it did not include the limitation with the use of her left hand that she testified to at the hearing before the ALJ. (R. 385).

For the reasons set forth above, the ALJ correctly addressed the limitations suggested by Johnston. The large majority of the evidence of record fails to support the conclusion that Johnston has any severe functional limitations with her left hand and that hypothetical that the ALJ posed was defective. Therefore, the fact that this limitation was not specifically enumerated in the ALJ's hypothetical does not render it defective.

## III. CONCLUSION

In conclusion, based on the evidence of the record and the briefs filed in support thereof, I find that the ALJ properly analyzed the evidence and that substantial evidence existed to support the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. As a result, the decision of the ALJ denying disability benefits to Plaintiff will be affirmed.

*********************************

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE M. JOHNSTON,                    )
                                     )
            Plaintiff,               )
                                     )
      -vs-                           )          Civil Action No. 07-1407
                                     )
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF SOCIAL               )
SECURITY                             )
                                     )
            Defendant.               )

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this 19th day of June, 2008, it is Ordered that Defendant's Motion for

Summary Judgment (Docket No. 9) is GRANTED. Plaintiff's Motion for Summary Judgment

(Docket No. 7) is DENIED. Judgement is entered in favor of Defendant and against Plaintiff.

This case is closed forthwith.


                              BY THE COURT:


                               /s/ Donetta W. Ambrose
                              Donetta W. Ambrose,
                              Chief U.S. District Judge